UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: EX PARTE APPLICATION OF HIDENORI TAKAGI,<br><br>Applicant,<br><br>v.<br><br>TWITTER, INC.,<br><br>Respondent. | Case No. 22-mc-80240-VKD<br><br>**ORDER DENYING TWITTER, INC.'S MOTION TO QUASH SUBPOENA**<br><br>Re: Dkt. No. 12 |

On October 13, 2022, the Court granted, with modification, applicant Dr. Hidenori Takagi's *ex parte* application for an order pursuant to 28 U.S.C. § 1782 authorizing service of a subpoena for documents on respondent Twitter, Inc. ("Twitter"). Dkt. No. 11. Twitter moves to quash the subpoena. Dkt. No. 12.

The Court held a combined hearing on Twitter's motion and similar motions to quash filed by Twitter and Google in *In re Ex Parte Application of Team Co. Ltd.* (No. 22-mc-80183) and *In re Ex Parte Application of Takada* (No. 22-mc-80221). Having considered the parties' submissions, as well as oral argument, the Court denies Twitter's motion to quash.[1]

**I.    BACKGROUND**

According to his application, Dr. Takagi is a licensed medical doctor and the sole proprietor of the Mukogaoka Clinic in Kanagawa-ken, Japan. Dkt. No. 1 at 1. According to Dr. Takagi, on March 23, 2022, an anonymous Twitter user with display name *konnoyukio@CmRUCE* posted a tweet falsely asserting that clinic staff posted made-up Google

---

[1] Dr. Takagi and Twitter have consented to magistrate judge jurisdiction. Dkt. Nos. 5, 9.

reviews and derogatory rumors about drug stores and other healthcare providers. *Id.* at 2; Dkt. No. 1-1 ¶ 9 and Ex. 1. That same day, anonymous letters of a threatening or hostile nature were received at the clinic and at Dr. Takagi's home address. Dkt. No. 1 at 2; Dkt. No. 1-1 ¶ 17.

A few days later, on March 28, 2022, the clinic's signboard was defaced by red paint, which Dr. Takagi describes as "imitating blood." Dkt. No. 1 at 2; Dkt. No. 1-1 ¶ 18 and Ex. 5. The next day, an anonymous Twitter user with display name *Aya@ay_chim0807* posted a tweet suggesting that the user was a former patient of Dr. Takagi and falsely asserting that Dr. Takagi had touched the patient inappropriately. Dkt. No. 1 at 2; Dkt. No. 1-1 ¶¶ 12-13 and Ex. 2. The tweet included two photos of a piece of paper with writing on it stuck on a shutter at the clinic. The writing states that the author was sexually assaulted by Dr. Takagi at the clinic and warns others to be careful. *Id.*

Dr. Takagi says that the tweets contain false statements that have harmed his and the clinic's reputation and business, and that he intends to file a civil action against the Twitter speaker(s) for damage to reputation in Japan. Dkt. No. 1 at 3. In addition, Dr. Takagi says he also intends to submit a criminal complaint to the Japanese police requesting an investigation of the Twitter user(s) for criminal defamation. *Id.* He explains that under Japanese law, once the Japanese police receive a criminal complaint for defamation, they will investigate the complaint to determine whether to recommend prosecution of the alleged offender. *Id.* at 3-4. However, in order to proceed with a civil action or a criminal complaint, Dr. Takagi says he must provide evidence specifically identifying the person or persons who allegedly posted the purported defamatory tweets. *Id.* at 3. Dr. Takagi says that he requires information from Twitter in order to proceed with these legal actions.

Dr. Takagi applied for permission to serve a subpoena on Twitter to obtain documents that would allow him to identify the Twitter user(s). Dkt. No. 1, Ex. A at ECF 15-16. The Court granted the application, with the requirement that Dr. Takagi must modify his document requests to seek only "documents sufficient to show" in place of "all documents showing." Dkt. No. 11 at 8. The Court required Twitter to give notice to the Twitter user(s) before complying with the subpoena. *Id.* at 8-9. Additionally, the Court authorized Twitter or "any person whose identifying

information is sought" to file a motion to quash or other motion contesting the subpoena. *Id.* at 9.

Twitter now moves to quash the subpoena. Dkt. No. 12. Dr. Takagi opposes the motion. Dkt. No. 17.

## II.  LEGAL STANDARD

Rule 45(d)(3)(A)(iii) requires a court to quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii).

Pursuant to 28 U.S.C. § 1782, a district court may order the production of documents or testimony for use in a foreign legal proceeding, unless the disclosure would violate a legal privilege. 28 U.S.C. § 1782(a); *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246-47 (2004). The statute may be invoked where: (1) the discovery is sought from a person residing in the district of the court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an "interested person." *Intel*, 542 U.S. at 246.

A district court is not required to grant an application that meets the statutory criteria, but instead retains discretion to determine what discovery, if any, should be permitted. *Id.* at 264. In exercising that discretion, the court considers several factors:

(1) whether "the person from whom discovery is sought is a participant in the foreign proceeding";

(2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";

(3) whether the discovery request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and

(4) whether the discovery requested is "unduly intrusive or burdensome."

*Id.* at 264-65.

### III. DISCUSSION

Twitter does not dispute that Dr. Takagi's application meets the statutory requirements of 28 U.S.C. § 1782(a). Nor does it contend that compliance with the subpoena requires Twitter to undertake unduly burdensome or costly efforts to search for and produce the documents requested.[2] Rather, Twitter moves to quash the subpoena on the ground that because the requested discovery implicates the First Amendment rights of an anonymous speaker, without adequate justification and evidentiary support, the subpoena is "unduly intrusive and burdensome" under the fourth *Intel* factor. Dkt. No. 12 at 1-2. Twitter raises an additional argument that the subpoena "conceals an attempt to circumvent" a U.S. policy favoring freedom of speech under the third Intel factor. *Id.* at 10-12. Dr. Takagi opposes the motion to quash on the ground that the First Amendment does not apply to the speech in question, and even if it did, he has demonstrated good cause for the discovery he seeks. Dkt. No. 17 at 1. He also disputes that the subpoena circumvents any U.S. policy of applying First Amendment protections to foreign speech. *Id.* at 18-19.

#### A. Whether the First Amendment Applies to Dr. Takagi's Application

Twitter argues that anonymous online speech is protected by the First Amendment to the U.S. Constitution, and that "[t]his protection applies in the context of Section 1782 applications when a foreign civil litigant, such as Applicant, seeks discovery in the United States with the assistance of United States courts." Dkt. No. 12 at 7. Twitter argues that the Court may not authorize discovery to ascertain the identity of the Twitter user(s) unless Dr. Takagi first satisfies the requirements of the *Highfields* test. *Id.* at 2, 7-8 (referring to *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005)). Dr. Takagi responds that the First Amendment does not protect the speech of a non-U.S. citizen located in Japan whose speech is not directed at a U.S.

---

[2] For the first time at the motion hearing, Twitter complained that Dr. Takagi's document requests are overbroad, even though he complied with the Court's initial order to limit his requests to documents "sufficient to show" the requested information. Twitter's belated objection is too little, too late. The Court will not consider it. *See, e.g., Foster v. Adams & Assocs., Inc.*, No. 18-cv-02773-JSC, 2020 WL 3639648, at *3 n.3 (N.D. Cal. July 6, 2020) (declining to consider arguments raised for the first time at oral argument) (citing *Booth v. United States*, 914 F.3d 1199, 1206 (9th Cir. 2019) (stating that arguments raised for first time at oral argument are waived)).

4

audience. Dkt. No. 17 at 1, 5.

U.S. citizens, whether inside or outside U.S. territory, possess First Amendment rights. *Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.* ("*USAID I*"), 570 U.S. 205 (2013). Moreover, absent national security concerns, the First Amendment protects the right to receive information in the United States from outside U.S. territory. *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 743-44 (9th Cir. 2021), *cert. denied sub nom. David v. Kazal*, 142 S. Ct. 1674 (2022). However, while non-citizens within a U.S. territory may possess certain constitutional rights, "it is long settled as a matter of American constitutional law that foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.* ("*USAID II*"), 140 S. Ct. 2082, 2086 (2020) (holding that foreign corporations do not possess First Amendment rights, even if affiliated with U.S. entities).

Twitter cites no contrary authority. Instead, it relies exclusively on cases that assume, without discussion or analysis, that the First Amendment applies. *See* Dkt. No. 12 at 6-7 (citing *Tokyo Univ. of Social Welfare*, among others); *see also* Dkt. No. 18 at 3 (citing additional district court cases in reply). Indeed, in its motion to quash, Twitter entirely ignores the only case directly on point in this District: Judge Tse's decision in *Zuru, Inc. v. Glassdoor, Inc.*, — F. Supp. 3d —, No. 22-MC-80026-AGT, 2022 WL 2712549 (N.D. Cal. July 11, 2022). *Zuru* expressly considered and rejected the proposition that the Court must apply First Amendment scrutiny to an application for discovery under 28 U.S.C. § 1782 where the discovery is sought in aid of a foreign defamation action against anonymous posters of reviews critical of a foreign company:

> Courts use the "real evidentiary basis" standard [of *Highfields*] to protect First Amendment rights. But the speakers here, the anonymous reviewers, don't have those rights. They worked for Zuru in New Zealand, and there's no reason to believe they were U.S. citizens. "[F]oreign citizens outside U.S. territory do not possess rights under the U.S. Constitution," including under the First Amendment.

*Zuru*, 2022 WL 2712549, at *5 (quoting *USAID II*, 140 S. Ct. at 2086). In its reply, Twitter calls *Zuru* an "outlier" and suggests that the Court nevertheless should rely on the cases that merely assume the First Amendment applies. *See* Dkt. No. 18 at 1, 4.

Here, as in *Zuru*, there is no reason to believe that the Twitter user(s) is a U.S. citizen. The

5

reviews were written in Japanese and directed at a Japanese business, and while the reviews may be accessible to anyone with an Internet connection, including U.S. citizens, they were not directed at the United States or anyone residing in U.S. territory. *Cf. Lamont v. Postmaster General,* 381 U.S. 301, 306 (1965) (holding unconstitutional a federal statute ordering seizure of "communist political propaganda" that was "printed or otherwise prepared in a foreign country" and sent to the United States). Twitter cites no authority for the expansive proposition that anonymous speech implicates First Amendment protections if that speech is merely *accessible* to U.S. citizens over the Internet.

Twitter observes that Dr. Takagi has not demonstrated definitively that the Twitter user(s) is *not* a U.S. citizen. *See* Dkt. No. 18 at 3. In these circumstances, Twitter suggests that the Court take a "protective approach" and assume that the anonymous speaker enjoys First Amendment protection. *See id.* at 4. The Court declines this suggestion for two principal reasons. First, Twitter is the party moving to quash and has access to information Dr. Takagi does not have, including a means to communicate with its account holder(s). Even if Twitter also does not have definitive information about the Twitter user(s)' citizenship, it likely is in a better position than Dr. Takagi to identify facts relevant to the question of citizenship. Having examined its own records and given notice to the Twitter user(s) as the Court ordered, Twitter has identified no information suggesting that the Twitter user(s) might be a U.S. citizen or otherwise entitled to First Amendment protection. During the hearing, Twitter advised the Court that the anonymous speaker(s) has not indicated to Twitter that he or she objects to disclosure of the information Dr. Takagi requests, and no such objection has been filed with the Court.

Second, as the Supreme Court emphasized in *Intel*, "[s]ection 1782 is a provision for assistance to tribunals abroad." *Intel*, 542 U.S. at 263. It does not require an applicant to show "that United States law would allow discovery in domestic litigation analogous to the foreign proceeding." *Id.* Twitter's objection to Dr. Takagi's subpoena reflects a deep skepticism about the merits of Japanese defamation law and about the operation of the Japanese legal system. *See, e.g.,* Dkt. No. 12 at 2 (citing the "severity of Japan's defamation law" in urging the Court to

6

consider whether the Twitter user(s) should be unmasked).[3]  The Court agrees with Judge Tse's observations in *Zuru* that "[o]ur country's commitment to free speech isn't universally shared; and even in other countries that protect free speech, a different balance is often struck between the right to free speech and the right to protect one's reputation, with the latter right usually receiving more weight."  *Zuru*, 2022 WL 2712549, at *5.  Simply assuming First Amendment protection applies, in the absence of any facts or circumstances suggesting that it does, is inconsistent with *Intel*'s caution against evaluating an anticipated foreign proceeding through the lens of the nearest domestic analog.

While the Court certainly has discretion to consider "the nature of the foreign tribunal" and "the character of the proceedings," *see Intel*, 542 U.S. at 264 (second factor),[4] the Court is not persuaded that Dr. Takagi's subpoena implicates the First Amendment to the U.S. Constitution, or that the subpoena will impose an undue burden on Twitter or the anonymous speaker(s) unless Dr. Takagi first makes a prima facie showing of defamation under Japanese law, supported by evidence, under the *Highfields* test.

### B. Whether Dr. Takagi's Application Must Meet an Alternative Standard of "Good Cause" or "Plausibility"

Twitter notes that some courts require applicants seeking discovery before a foreign proceeding is initiated to meet the "good cause" standard that applies to requests for early discovery under the Federal Rules of Civil Procedure.  Dkt. No. 12 at 7.  The "good cause" standard requires consideration of whether the applicant: (1) identifies the party with sufficient

---

[3] In support of its claim about the "severity" of Japanese defamation law, Twitter relies on a citation to the Japanese *criminal* code and a related news broadcast.  *See* Dkt. No. 12 at 2 n.1.  However, Dr. Takagi seeks discovery in aid of a *civil* action for defamation, although he also notes that he intends to file a criminal complaint once he learns the Twitter user(s) identity.

[4] Twitter does not suggest that either its compliance with the subpoena or Dr. Takagi's proposed Japanese defamation action will lead to a violation of fundamental human rights.  *See In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 572 (9th Cir. 2011) ("We can conceive of situations in which the Constitution might require the district court to deny a request for assistance.  For example, if credible evidence demonstrated that compliance with a subpoena would lead to an egregious violation of human rights, such as torture, then the Constitution may require the courts to deny assistance.").

specificity that the court can determine that the party is a real person subject to suit; (2) identifies all previous steps taken to locate and identify the party; (3) demonstrates that the action can withstand a motion to dismiss; and (4) proves that the discovery is likely to lead to identifying information. *See, e.g., Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*, No. 21-MC-80102-DMR, 2021 WL 4124216, at *3 (N.D. Cal. Sept. 9, 2021); *In re Frontier Co., Ltd.*, No. 19-MC-80184-LB, 2019 WL 3345348, at *3 (N.D. Cal. July 25, 2019); *In re Ex Parte Application of Jommi*, No. C 13-80212 CRB (EDL), 2013 WL 6058201, at *4 (N.D. Cal. Nov. 15, 2013); *see also Columbia Ins. Co. v. seescandy.com,* 185 F.R.D. 573, 577 (N.D. Cal. 1999) ("As a general rule, discovery proceedings take place only after the defendant has been served; however, in rare cases, courts have made exceptions, permitting limited discovery to ensue after filing of the complaint to permit the plaintiff to learn the identifying facts necessary to permit service on the defendant."). This approach appears to be based on a view that "discovery under section 1782 is guided by the standards set forth in the Federal Rules of Civil Procedure." *Tokyo Univ.*, 2021 WL 4124216, at *3.

The proposition that applicants for discovery pursuant to 28 U.S.C. § 1782 are, or should be, required to show "good cause" for that discovery does not have clear support in the language of the statute itself. Section 1782 provides in relevant part:

> The order [authorizing discovery] may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a). In *Intel*, the Supreme Court described this "practice and procedure" part of the statute as a "mode-of-proof-taking instruction" that "imposes no substantive limitation on the discovery to be had." *Intel*, 542 U.S. at 260 n.11.[5] For this reason, the Court questions whether it

---

[5] However, elsewhere, the Court suggested that "the controls on discovery" available to the district court, such as in Rules 26(b) and (c), could be employed to prevent improper discovery of trade secrets and other confidential information. *Intel*, 542 at 266.

is appropriate to *require* Dr. Takagi to meet the "good cause" standard Twitter describes as a pre-condition for discovery.

Alternatively, Twitter argues in its reply brief that Dr. Takagi's proposed defamation action does not meet the "plausibility standard set forth in *Zuru*," and the subpoena should be quashed on this basis. Dkt. No. 18 at 2, 6-7. Twitter's arguments about a "plausibility" standard are not well-developed, and it is not entirely clear what standard Twitter would have the Court apply. The *Iqbal/Twombly* "plausibility" standard for domestic pleadings requires factual allegations that permit the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nothing in the text of 28 U.S.C. § 1782 suggests that Congress contemplated that district courts would apply this type of "plausibility" test to the foreign claim before authorizing discovery. Indeed, undertaking an *Iqbal/Twombly*-type "plausibility" review would be difficult to do where, as here, the foreign proceeding is anticipated but no complaint has been filed, or where the case-initiating documents in the foreign proceeding do not require the same kind of supporting factual allegations. *See Intel*, 542 U.S. at 259 (adjudicative proceedings need not be pending or imminent, so long as they are within reasonable contemplation; discovery may be obtained for use in pre-complaint investigations).

In *Zuru*, Judge Tse did not require Zuru to support each element of its defamation claim with competent evidence, but instead "considered Zuru's allegations and concluded that they could support a defamation claim in New Zealand." *Zuru*, 2022 WL 2712549, at *2-3, *6; *see also id.*, at *2 ("Putting aside whether Zuru will be able to prove these four elements [of defamation] at trial, it is clear that the company plausibly can plead them."). *Zuru* acknowledged that "a merits review isn't required" but that "[a] peek at the merits" was appropriate in that particular case. *Zuru*, 2022 WL 2712549, at *2. In peeking at the merits, Judge Tse undertook a substantive review of Zuru's anticipated civil action: the court examined the elements of Zuru's claim for defamation under New Zealand law, considered Zuru's supporting declarations, and assessed Glassdoor's counter-arguments before concluding that Zuru could support a plausible claim for defamation under New Zealand law. *Id.* at *2-*3.

9

While nothing prevents the Court from considering whether a section 1782 application describes a plausible claim for relief, such that the claim might withstand a motion to dismiss under Rule 12(b)(6) and *Iqbal/Twombly* if it were filed as a domestic action, or otherwise reflects "good cause" for discovery, the Court is reluctant to endorse a standard for exercising discretion that does not derive from the statute itself (or the Supreme Court's interpretation of it) and that seems ill-suited to an application for discovery in aid of a foreign proceeding that is within reasonable contemplation but not yet filed. However, at a minimum, a district court can require an applicant to describe the legal and factual bases for a contemplated foreign legal proceeding, and to explain how the discovery the applicant seeks will aid prosecution of that proceeding.

Here, Dr. Takagi exceeds this minimum standard. He has described a plausible claim against the Twitter user(s) under Japanese law and has shown good cause for discovery.[6] Dr. Takagi intends to file a civil action for defamation, or damage to his reputation, under Articles 709 and 710 of the Civil Code of Japan. Dkt. No. 17 at 11. Article 709 provides for general tort liability, including liability for reputational torts, and Article 710 provides that damages may encompass compensable loss for interests other than damage to property. *Id.*; *see also* Dkt. No. 17-2 ¶ 16; Dkt. No. 17-3, Ex. A. According to the declaration of Akio Noguchi, the Japanese lawyer representing Dr. Takagi in Japan, the elements of a reputational tort in Japan are: (1) an unlawful act infringing a person's reputation; (2) damages; (3) a causal relationship between the unlawful act and the damages; and (4) intent or negligence. Dkt. No. 17 at 11-12 (citing Dkt. No. 17-2 (Noguchi decl.) ¶8). A statement is an unlawful act if the statement lowers a person's public reputation based on how an average reader would ordinarily understand the statement, and the statement is either a false assertion of fact or an opinion based on untrue facts. *Id.* at 12.

The anonymous statements in question are as follows:

**Tweet 1**

konnoyukio
@CmrRUCE

---

[6] Twitter does not dispute that Dr. Takagi identified the Twitter user(s) with sufficient specificity, explained why he requires discovery from Twitter to locate and identify the Twitter user(s), and demonstrated that Twitter likely has the identifying information he needs.

- Mukogaoka Clinic is a private clinic, but it's beyond a comprehensive hospital ...
- It puts a lot of effort into making its staff and agents to post Google reviews that it made up, and is desperate about writing badly about surrounding clinics.
- Recently, the clinic is posting derogatory untrue rumors about drug stores and orthopedics that it is angry at.

**Tweet 2**

Aya
@ay_chim0807

This was posted. When I had an examination before, I also had my body touched a lot. It was scary.

It was so scary that he was really grinning.

#Kawasaki-shi #Hospital #Mukogaoka Clinic #Fear #Kanagawa-ken #Hostess #Tokyo #Osaka #Hakata #Nagoya #Harmed #Please RT #Please spread the message

Dkt. No. 1-3 at ECF 3-4. As discussed above, Tweet 2 also contained photos purporting to show papers posted outside Dr. Takagi's clinic. As translated by Dr. Takagi, the messages on those papers are as follows:

I was sexually assaulted by the director here.

Everyone please be careful.

Director Takagi

     Mukogaoka Clinic

The director here hides his medical malpractice.

  Can this be forgiven

1854-201 Noborito, Tama-ku, Kawasaki-shi

Mukogaoka Clinic

Takagi

> We know about your Google reviews
> ~~Takagi~~
>
> 2-17-1 Higashi, Shibuya-ku
>
> Yuriko Yamamoto
> ~~Takagi~~
>
> Don't do it
> ~~Takagi~~

Dkt. No. 1-3 at ECF 5-9. According to Dr. Takagi, his clinic specializes in the treatment of menopausal disorders, and a significant portion of the clinic's patients are female. Dkt. No. 17-1 ¶¶ 15-17. He claims that Tweet 1 is false because his clinic "has never posted any made-up Google reviews, either through staff or agents," "has never wrote badly about surrounding clinics, and has never posted derogatory untrue rumors about other drug stores or orthopedics." Dkt. No. 1-1 ¶ 10. He also claims that Tweet 2 is false, averring that he would never touch a female patient in the manner described in the Tweet, has never committed any sexual crime, and has never covered up or hidden malpractice, noting that neither he nor the clinic have ever been accused of medical malpractice, and that there are no ongoing malpractice lawsuits or disputes against him or the clinic. *Id*. ¶ 13; Dkt. No. 17-1 ¶ 9. Dr. Takagi attests to the nature of the harm he has suffered or expects to suffer as a result of the anonymous statements (as well as the threatening letters he received and red paint splashed on the clinic's signboard), including distress over the loss of his medical license and business if the Tweets are believed to be true, and fear for his personal safety, and that of his spouse, employees, and patients. Dkt. No. 17-1 ¶¶ 8, 10-13, 17-20. Dr. Takagi's Japanese counsel attests that, in his opinion, the anonymous statements are actionable under Japanese law, which he discusses at length, and that Dr. Takagi will be able to satisfy the other elements of a reputational tort. Dkt. No. 17-2 ¶¶ 7-25.

In its motion to quash, Twitter ignores Japanese law in challenging the viability of Dr.

Takagi's proposed civil action. *See* Dkt. No. 12 at 8-9. In reply to Dr. Takagi's opposition and supporting declarations, Twitter continues to rely on U.S. legal principles. Twitter does not provide any competing declaration regarding the requirements of Japanese law. Its principal objection is that the anonymous statements cannot reasonably be understood as false assertions of fact and are unlikely to have harmed Dr. Takagi or his business. *See* Dkt. No. 18 at 9-12. In any event, at oral argument Twitter indicated that it does not necessarily take the position that the discovery should be denied; rather, Twitter's primary interest is in having the Court conduct some sort of review of an applicant's claims before information is produced. Dkt. No. 21.

It remains to be seen whether Dr. Takagi succeeds on the merits of his anticipated defamation claims. But Twitter has not made a persuasive case that the proposed civil action for defamation is pretextual or intended solely to harass, or that there is any other reason for this Court to quash Dr. Takagi's subpoena in the exercise of its discretion under 28 U.S.C. § 1782. The merits of Dr. Takagi's action should be addressed by the relevant court in Japan.

### C. Whether the Subpoena Circumvents U.S. Policy

Twitter argues that the United States has a pro-free speech policy and that Dr. Takagi's subpoena for discovery in aid of a proposed defamation action in Japan threatens to circumvent this policy. Dkt. No. 12 at 2-3, 10-12. Dr. Takagi responds that no such policy exists, as First Amendment protections do not apply to non-citizens outside the territory of the United States. Dkt. No. 17 at 1, 3-8.

The Court agrees with Judge Tse's observation in *Zuru* that the First Amendment "doesn't reflect a U.S. policy of protecting free speech around the world." *Zuru*, 2022 WL 2712549, at *5; *see also USAID II*, 140 S. Ct. at 2086 (foreign affiliate of domestic corporation has no First Amendment rights). In its reply, Twitter argues that "U.S. courts routinely find First Amendment concerns to be a sufficient public policy basis for refusing to enforce foreign judgments." Dkt. No. 18 at 5. But there is no reason to assume that standards for enforcement of foreign judgments[7]

---

[7] Enforcement of judgments issued by foreign courts in the United States is governed by state law. *See* https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/Enforcement-of-Judges.html.

13

1  express a policy of the United States that applies to providing discovery for use in foreign

2  proceedings.[8] Indeed, the only clear nationwide policy that the United States has articulated with

3  respect to discovery in aid of foreign proceedings is the policy embodied in 28 U.S.C. § 1782, and

4  that policy is to promote efficient assistance to participants in international litigation and to

5  encourage foreign courts to provide reciprocal assistance. *See ZF Auto. US, Inc. v. Luxshare, Ltd.*,

6  142 S. Ct. 2078, 2088 (2022); *Schmitz v. Bernstein Liebhard & Lifshitz LLP*, 376 F.3d 79, 84 (2d

7  Cir. 2004). Moreover, in construing that statute, the Supreme Court specifically rejected the

8  argument that discovery should be authorized only if that discovery also would be permitted if the

9  case was brought in a domestic court. *Intel*, 542 U.S. at 263 ("We also reject Intel's suggestion

10  that a § 1782(a) applicant must show that United States law would allow discovery in domestic

11  litigation analogous to the foreign proceeding.").

12  In sum, Twitter has identified no public policy of the United States that Dr. Takagi's

13  subpoena would circumvent.

## IV. CONCLUSION

15  For the reasons explained above, the Court denies Twitter's motion to quash. Twitter shall

16  produce documents responsive to the subpoena no later than 30 days from the date of this order.

17  Any information Dr. Takagi obtains pursuant to the subpoena may be used only for

18  purposes of the anticipated civil action for the violation of Articles 709 and 710 of the Japanese

---

[8] The Court questions the premise that enforcement of foreign judgments necessarily implicates U.S. constitutional protections, like the First Amendment. *See Naoko Ohno v. Yuko Yasuma,* 723 F.3d 984, 992 (9th Cir. 2013) (holding that domestic enforcement of a Japanese money judgment against a church "does not constitute domestic state action triggering constitutional scrutiny"). The SPEECH Act, 28 U.S.C. §§ 4101-4105, to which Twitter refers in a footnote of its reply, was enacted to protect *United States authors and publishers* against judgments against them in foreign jurisdictions that are less protective of free speech. *See Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 487 (5th Cir. 2013) ("In enacting the statute, Congress found that 'by seeking out foreign jurisdictions that do not provide the full extent of free-speech protections to authors and publishers that are available in the United States' and by suing United States authors or publishers in those foreign jurisdictions, some persons were 'obstructing' the free expression rights of domestic authors and publishers and 'chilling' domestic citizens' First Amendment interest in 'receiving information on matters of importance.'") (quoting Findings to Pub. L. No. 111–223, § 2, 124 Stat. 2380, reproduced in the Notes section of 28 U.S.C. § 4101).

Civil Code and anticipated criminal complaint to the Japanese police requesting an investigation of the Twitter user(s) for criminal defamation.  Dr. Takagi may not release such information or use it for any other purpose, absent a Court order authorizing such release or use.

**IT IS SO ORDERED.**

Dated: February 1, 2023

VIRGINIA K. DEMARCHI
United States Magistrate Judge